**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

3109 Hwy. 25 S., L.L.C. d/b/a 25 Drive-In and Tommy McCutcheon, Respondents,

v.

Duke Energy Carolinas, LLC, Appellant.

Appellate Case No. 2018-000475

———————

Appeal from the Public Service Commission

———————

Memorandum Opinion No. 2019-MO-034
Heard May 30, 2019 – Filed August 21, 2019

———————

**AFFIRMED**

———————

Frank Rogers Ellerbe III and Samuel J. Wellborn, both of Robinson Gray Stepp & Laffitte, LLC, of Columbia, Heather Shirley Smith, of Duke Energy Corporation, of Greenville, and Rebecca Jean Dulin, of Duke Energy Corporation, of Columbia, all for Appellant.

John J. Fantry Jr., of Fantry Law, of Winnsboro, and Alexander George Shissias, of The Shissias Law Firm, LLC, of Columbia, both for Respondents.

———————

**JUSTICE JAMES:**  In this direct appeal, we must determine whether the Public Service Commission of South Carolina erred in ordering Duke Energy Carolinas, LLC,[1] to return a Greenwood, South Carolina customer to a less expensive electricity rate that is available to certain Duke customers in that area of the state.  We affirm the Commission.

## I.

Tommy McCutcheon and his wife own and operate 25 Drive-In, a drive-in movie theater located in Greenwood.  Duke provides electricity to the theater.  On May 30 and June 13, 2015, there were power outages at the property; both occurred when Duke's service line melted.  Duke claimed the theater's energy consumption was too much for the existing service line to handle.  McCutcheon claimed the theater's energy consumption was conservative and did not cause the outages.  Duke upgraded the drive-in's facilities to handle the supposed increased load and per Duke's internal policy, removed the drive-in from the "Greenwood rate" and placed it on the significantly more expensive "Duke rate."

The Greenwood rate is a product of Act No. 1293 of 1966.  In 1965, Duke offered to purchase properties of the Greenwood County Electric Power Commission (GEPC).  In response to Duke's offer, the General Assembly enacted the Act, authorizing the sale of GEPC property under certain terms.  In pertinent part, the Act provides:

> The rates to be charged for electric power for all connections which exist at the consummation of the sale shall be the lower of the rates charged by [GEPC] and Duke Power Company and the same shall not be grounds for any claim alleging discrimination.  The rates to be charged for electric power for connections after the date of the sale shall be the applicable rates of Duke Power Company.  As used herein the word "connections" shall be deemed to mean the physical connection of a residence or business establishment and shall have no reference to the person or business firm occupying the premises so connected, and the benefit of the lower rate shall continue although the person or firm occupying such premises may change from time to time.

---

[1] Duke Power Company was a predecessor to the current Duke Energy Corporation.  Duke Energy Carolinas, LLC, is a subsidiary of Duke Energy Corporation.  We will refer to all these entities as "Duke."

Act No. 1293, 1966 S.C. Acts 3294, 3297. At the time the sale was executed, energy costs were trending downward, and it was expected customers impacted by the sale would eventually migrate from the Greenwood rate to a lower Duke rate. Obviously, this estimate proved to be incorrect as energy costs instead trended upward. As a result, there are still approximately 2,540 Duke accounts on the 1966 Greenwood rate. The Greenwood rate is significantly less expensive than the Duke rate, and customers on the Greenwood rate work arduously to keep it.

This Court has previously interpreted the terms of the Act to allow customers to be transferred from the Greenwood rate to the Duke rate when a "new connection" has been established. *See Payne v. Duke Power Co.*, 304 S.C. 447, 452, 405 S.E.2d 399, 401-02 (1991) (holding a "new connection" effectuates a transfer from the Greenwood rate to the Duke rate). We have further explained, "[A] change in either the character of the connection (e.g. from single to three phase) or use of the premises (e.g. from residential to commercial) constitutes a new connection effectuating a transfer to Duke rates." *Id.*

McCutcheon filed a complaint against Duke with the Commission, alleging the drive-in's transfer to the Duke rate was improper. Duke argues the transfer was proper because a new connection was established at the drive-in when it upgraded the drive-in's facilities to handle an increased load. The Commission ordered Duke to place the drive-in back on the Greenwood rate, subject to certain limitations. Duke appeals, claiming (1) substantial evidence in the record does not support the Commission's conclusions, and (2) the Commission's decision was controlled by an error of law.

## II.

In its order placing the drive-in back on the Greenwood rate, the Commission noted the critical need for Duke to provide safe, reliable power to its customers and the unfairness that would result in punishing Duke for actions taken to remedy an "unsafe situation." However, the Commission also noted, "[I]t would not be appropriate to have the [drive-in] -- operating for a number of years in apparent compliance with the Greenwood Rate, and taking measures to ensure compliance with the Rate -- to be removed from the rate without specific proof that they had become non-compliant with the rate." As a result, the Commission ordered Duke to place the drive-in back on the Greenwood rate, subject to certain limitations (these limitations are not an issue in this appeal).

Duke requested rehearing;[2] in its order denying rehearing, the Commission clarified that its ruling was not based on a finding as to whether Duke's upgrade constituted a change in the character of the connection sufficient to establish a new connection. The Commission explained it found "inadequate information was available to determine that a change in character was necessitated in this case due solely to the actions of [McCutcheon]."[3]

We may reverse or modify the Commission's decision if the substantial rights of an appellant have been prejudiced by a decision clearly erroneous in view of the substantial evidence in the record. *See* S.C. Code Ann. § 1-23-380(5)(e) (Supp. 2018). We have held:

> "Substantial evidence" is not a mere scintilla of evidence nor evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action.

*Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981) (quoting *Laws v. Richland Cty. Sch. Dist. No. 1*, 270 S.C. 492, 495-96, 243 S.E.2d 192, 193 (1978)). We are prohibited from substituting our own judgment for that of the Commission upon a question as to which there is room for a difference of intelligent opinion. *Hamm v. Pub. Serv. Comm'n of S.C.*, 310 S.C. 13, 16-17, 425 S.E.2d 28, 30 (1992).

Duke argues there is no substantial evidence in the record to support the Commission's ruling that the drive-in was eligible for the Greenwood rate. Specifically, Duke contends there was no basis for the Commission to conclude that "the thermal outages were caused by anything other than [the drive-in's] electricity demand exceeding the capacity" of the existing facilities, and Duke further argues McCutcheon "provided no credible alternative theory as to the failure of the electric service line." We disagree.

_____

[2] Duke's motion requesting rehearing is not in the record on appeal.

[3] During its reply argument before this Court, Duke argued for the first time that the Commission improperly shifted the burden of proof from McCutcheon to Duke. We find this argument unpreserved, as it was never raised to or ruled upon by the Commission. *See Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 519-20, 560 S.E.2d 410, 417 (2002) (finding an issue unpreserved because it was not raised to or ruled upon by the trial court).

The parties agree the power outages occurred because the service wire had melted. However, they do not agree as to why the wire melted. McCutcheon's expert, James R. Calhoun, testified before the Commission the wire melted because it was deteriorated and that neither the drive-in's equipment nor thermal overload caused the wire to melt. Duke's expert, Joel Lunsford, testified the service wire failed because of thermal overload caused by the drive-in's consumption of power above the wire's maximum amperage rating. There is also evidence in the record—as cited by the Commission—establishing McCutcheon installed modern, more energy-efficient equipment at the drive-in before the two outages occurred.

Evidence was presented that after the second outage, and after Duke completed the upgrade, Duke placed a demand meter on the service wire. There was testimony that the drive-in reached a demand level of 225 amperes after Duke installed the demand meter. Duke argues this evidence establishes the outages were caused by thermal overload. However, the Commission was free to give little or no weight to this evidence, as the demand meter was installed after the second outage, and there was no demand meter in place at the time of either of the two outages.

The Commission obviously evaluated the evidence presented at the hearing. Although reasonable minds could differ, substantial evidence supports the Commission's finding that the evidence in the record did not establish a change in the character of the connection "was necessitated in this case due solely to the actions of [McCutcheon]." In every fact-dependent case, fact-finders must evaluate the evidence and reach a decision; here, the Commission, as fact-finder, simply did not evaluate the evidence in the way Duke desired.

### III.

We may reverse or modify the Commission's decision if the substantial rights of an appellant have been prejudiced by a decision affected by an error of law. *See* S.C. Code Ann. § 1-23-380(5)(d) (Supp. 2018).

Duke argues the Commission found a "new connection" was established when Duke upgraded the drive-in's facilities, and pursuant to Act 1293, the Commission's decision to return the drive-in to the Greenwood rate constituted an error of law. Duke asserts our prior decisions in *Duke Power Co. v. South Carolina Public Service Commission*, 284 S.C. 81, 326 S.E.2d 395 (1985), and *Payne v. Duke Power Co.*, 304 S.C. 447, 405 S.E.2d 399 (1991), support such a finding. We disagree.

In neither *Duke Power Co.* nor *Payne* did we specifically hold that an upgrade of a customer's facilities conclusively constitutes a change in the character of the

connection sufficient to establish a new connection. As discussed above in Section II, the Commission considered the evidence presented and concluded the evidence did not establish a change in the character of the connection "was necessitated in this case due solely to the actions of [McCutcheon]." The Commission declined to find an upgrade of a customer's facilities constitutes, as a matter of law, a change in the character of the connection sufficient to establish a new connection. We agree with the Commission's analysis.

Duke also argues Act 1293 does not allow the drive-in, once it was placed on the Duke rate, to "re-qualify" for the Greenwood rate. Under the unique facts of this case, we disagree. Here, McCutcheon vehemently protested his removal from the Greenwood rate. Duke still removed him from the Greenwood rate, and McCutcheon challenged his removal to the Commission. Duke appears to assert that once McCutcheon was placed on the Duke rate, he can never be placed back on the Greenwood rate. Under this reasoning, if Duke arbitrarily removes a customer from the Greenwood rate (as it arguably did here) and places the customer on the Duke rate, this decision would never be reviewable. Such an interpretation of the Act would be absurd and would deprive the Commission of its authority to review Duke's rate-setting activity in the area encompassed by Act 1293. *See* S.C. Code Ann. § 58-27-1940 (2015) ("Any person, corporation, or municipality having an interest in the subject matter, including any electrical utility concerned, may petition in writing setting forth any act or thing done or omitted to be done by any electrical utility in violation, or claimed violation, of any law which the [C]ommission has jurisdiction to administer or of any order or rule of the [C]ommission."); *Payne*, 304 S.C. at 451 n.6, 405 S.E.2d at 401 n.6 ("Although . . . [we] held that Act 1293 divested [the Commission] of jurisdiction to raise the old Greenwood rates, [the Commission] is not prohibited from exercising its regulatory authority in a manner consistent with the Act."). The Commission's ruling does not exceed its authority to ensure Duke is charging its customers the legally prescribed rates.

Therefore, we hold the Commission did not err in returning the drive-in's account to the Greenwood rate.

## IV.

For the foregoing reasons, we affirm the Commission.

**AFFIRMED.**

**KITTREDGE, Acting Chief Justice, HEARN, FEW, JJ., and Acting Justice Paula Thomas, concur.**